Their argument in Stilp v. Contino. I think this is not going to be too good. Mr. Hopkirk. Good morning, Your Honors.  My name is Howard Hopkirk. I'm a Senior Deputy Attorney General with the Pennsylvania Office of Attorney General. I represent the appellants John Contino, the Executive Director of the Pennsylvania State Ethics Commission, and Attorney General Tom Corbett. I would like to reserve three minutes for rebuttal. Granted. This case raises the question of whether the confidentiality provisions of individuals who file a complaint under the Act. I'm going to stop you right here and ask you to define confidentiality provisions. But before I do, let me say this. A close reading of the District Court's opinion, and any reading of the District Court's injunction, make it clear that all he was enjoining, all the court was enjoining, was publicizing the fact that a complaint has been filed with the commission. You agree with that, right? That's correct, Your Honor. It denied the injunction in all other respects. So what are the confidentiality provisions of 1108K that you argue the District Court struck down? Okay, Your Honor. The confidentiality provisions apply unless there's an exception to any proceedings before the Ethics Commission. Where only the only thing he enjoined was publicizing the fact of the filing of a complaint. I repeat, what confidentiality provisions did he strike down? Because the entire brief is about confidentiality provisions, and I don't see them. Well, I guess what I'm saying, Your Honor, is 1108 is a blanket confidentiality provision, and there are enumerated exceptions to that, and what the judge has done is he has, in effect, created another exception, which applies to complainants. No, he didn't do. He said no. He found the one thing that is confidential here is the fact of filing. That's the only thing he dealt with in the opinion and in the injunction. There wasn't any of that. There wasn't anything else to deal with here. Well, Your Honor, the what he, in effect, did was he created an exception to the confidentiality provisions under the Act. No, an exception to the confidentiality provisions would permit disclosure.  That's correct, Your Honor. The only thing he dealt with, the only thing he granted the injunction as to, was publication of the fact of filing, period. That's it. All right. That's what he did. Question. Is mere publication of the fact of filing a complaint a content-based restriction entitled to strict scrutiny? I filed a complaint. Is that content-based? Yes, Your Honor. It is content-based, although it's a narrow content-based because you're not talking about the underlying substance of whatever is being complained about. But the fact that you're saying you filed a complaint, the substance, that does have substantive qualifications to it, which make it subject to strict scrutiny. You don't disagree that someone who has a grievance can go out in the front yard here and say everything he or she wants to say about what's wrong, correct? That's correct, Your Honor. The only thing that is prohibited under this district court's order here, if that person files a complaint with the commission, can't say he did it. And that's content-based? Yes, Your Honor. That is content-based. And, I mean, that goes against, you know, it would help me if it wasn't content-based, but it is content-based. And I think if you look at the BOW decision from the Fourth Circuit and the Second Circuit decision in Kamazinski and the Ninth Circuit case, Lind, now some of those support my overall position and some don't, but they all show that it would be a content-based subject to strict scrutiny. And I think the district judge and all the parties in the district court agreed that it was content-based. Oh, yeah. But it wasn't the question wasn't as narrowly focused as I focused it with you. Because in this particular case, the press relief accompanies the complaint and it gets a little more complicated. Well, if you go right back to the ruling of the district court, it was a very, very narrow injunction that was granted. And it's our position that even without the district court's injunction, Mr. Stilp would be free to go out and talk about whatever objections or complaints he has regarding public officials. It's only the filing of the complaint itself, which publicizing that interferes with the investigation of the commission. But here, of course, there was no investigation. His complaint was dismissed within 24 hours of filing. So I assume he was perfectly free once the 24 hours had expired and the proceedings had terminated to then talk about filing of the complaint. Correct? Well, in a way, that's correct. But what I'd like to do is make a distinction. The present lawsuit is for prospective relief for future complaints that Mr. Stilp might file. We are here on his appeal, on your appeal, from the grant of a very narrow preliminary injunction. This is not the end of the case. There's been no cross-appeal from the broad part of the injunction that was denied. So we're here on a very narrow grant of a preliminary injunction, aren't we? Yes, Your Honor. But we don't have to decide anything else, do we? The preliminary injunction is before you, but it's very hard to see what the court said wasn't unconstitutional about the confidentiality provisions as far as they relate to a complainant. Under that, I think what the district judge said was Mr. Stilp isn't coming forward as a witness or a third party or something like that, so we're not touching that. But as far as it affects a complainant, it effectively is unconstitutional and cannot be applied. I don't think if Mr. Stilp filed the complaint and then waited two months to make his publication, that would still run afoul of the district court's decision. And I think respectfully, Your Honor, I think there's a confusion I want to clear up. This prior case which Mr. Stilp had where he actually filed a complaint, that was resolved, there was some type of settlement agreement with the commission. That case is over. The only relevance that case had was to show that Mr. Stilp has standing and that this is something he wishes to engage in in the future. The complaint does not say that he's going to be filing frivolous complaints or it's just that he wants to file complaints and publicize them in the future. I think the court should look at its own decision in the First Amendment Coalition case. Was there a criminal penalty for violating confidentiality in the First Amendment, in the judge review panel case? I don't believe, I'm not sure of that. I don't think there was, but I'm not positive about that. Because doesn't the existence of a criminal penalty make the extent of the prohibition on revealing the filing of the complaint, doesn't that require us to look at it even more carefully? Well, I think the first thing you do is you determine whether there's a compelling interest. And then the fact that there's criminal penalties may or may not have a factor on whether it's narrowly drawn or not. It's our position that the criminal penalties are a necessary and an effective way to accomplish the purpose behind the confidentiality provisions and that things like civil penalties are not always going to be effective because parties may just calculate that, well, that's a cost of doing business or if I want to interfere with a campaign or interfere with an investigation that I'm willing to pay, a party may be just willing to absorb some type of civil penalty, whereas a criminal penalty is going to have more teeth. Well, okay, go ahead. So I think the First Amendment Coalition, although it's in the realm of the judiciary and this is in the realm of elected public officials, the types of interests involved are similar and they overlap. And if they're justified in the context of the judicial board, then they should be justified in the realm of the public officials. Let me see, that's where I totally disagree with you. The landmark case, you point to the First Amendment Coalition case and say it controls here. But we have the Supreme Court's landmark case, we have the First Amendment Coalition, we have Kamicinski out of the Second Circuit. These cases all dealt with complaints against judges filed with judicial review boards. There are very different interests, as all of those cases made clear, that operate and advantages that confidentiality provides in the judicial review context. Landmark goes through four of them. First Amendment Coalition and Second Circuit and Kamicinski. And I add this one of my own. We are bound by the constraints of the bench not to even answer a complaint, much less try to get support for whatever we may be alleged to have done. So I'm not the least bit sure that the judicial review cases are as applicable or controlling as you say they are. I see I'm out of time, but can I briefly answer? Sure, please do. The interest of the commission, I mean, one, to protect the integrity of elections. It's not to protect the reputation so much of public officials, but the integrity of the electoral process. And also, and it's the same as in investigations under the Judiciary Board, that investigations, no matter how they're conducted, if witnesses can be intimidated by powerful officials, just like they might be intimidated by judges or other interested parties, that those same interests support confidentiality. And I see I'm out of time, so I'll just save the rest of my time for rebuttal. All right. Thank you. Mr. Martin. Thank you, Your Honor. May it please the Court, my name is Aaron Martin. I represent Gene Stilp, who is a private citizen. We think that the case law is very, very supportive of our position. We've cited four state Supreme Courts that have actually dealt with the issue. The opinion of the Attorney General of the State of Kansas, which is on our side. The Ninth Circuit Court of Appeals, which is on our side. We believe the Judicial Inquiry and Review Board, First Amendment Coalition, while perhaps it is a little different in dealing with the review of complaints against judges, nevertheless has reasoning that is on our side. And even the Kamazinsky case from the Second Circuit held that limited prohibition on disclosure would be tolerated, but only up until a determination of probable cause. Kamazinsky found that prohibiting the disclosure of the fact of filing violated the First Amendment in the judge's context. Yes. And so we think that the case law is so well established that it would be quite divergent for this Court to overrule what the District Court did. There is a deferential standard of review already as to the Court's factual findings. And any law... You agree with me, I think, that all he did was grant an injunction as to the fact of filing, publicizing the fact of filing. Strictly speaking, I believe that is correct. And he denied that, strictly speaking, and that is what he did. Yes? As it is written, I believe that is what he did. As it is written, that is what he did. So he denied the injunction in all other respects. Yes, Judge Barry. I would mention one aspect... There has been no cross-appeal. No. I would mention one aspect of this which... I can't say that Judge Conner specifically put in his order because he didn't. But part of the reason why my client was originally civilly prosecuted, and which is the stated policy of the Ethics Commission, is that if you announce you intend to file, you can be penalized for that. And some of the amazing testimony that came out of the District Court had to do with, well, what happens if someone falsely announces that he or she intends to file? Is there a penalty for that? And the answer by the Executive Director was no. So in that situation, we have a criminalization of truthful speech, whereas false speech goes unpunished. Yes, but the Rittenbaugh dealt with the Rittenbaugh law. The Rittenbaugh policy, which makes no sense at all. And I think that fairly reading the order, Rittenbaugh does fall because of the way Judge Conner invalidated 1108K with respect to disclosure of the fact. It would seem to me that fairly encompasses an anticipatory disclosure also. Well, it's hard to just take out this very, very narrow piece because you can stand on the lawn and say, these terrible things have been done, and then you can walk into the commission and file, but you can't say you did. I would say also that I think what is happening here is there are actually two fundamental constitutional rights involved, not only freedom of speech, but also right to petition. And somehow the government appellants are arguing that,  maybe you have the right to freedom of speech, but once you combine them and you speak about the fact that you've petitioned, now we can penalize that civilly and criminally. I also suggest that results in what I called in one of my briefs a constitutional absurdity. The more that you look into the implications of this, the less and less sense it makes, the less and less defensible it is.  And arguably the effect of disclosing a complaint to an officer with very wide criminal jurisdiction is something which is more potentially damaging to the system than would be if it's reported to a state ethics commission, which does not have itself criminal prosecutorial authority. If the statute were more narrowly drawn, for instance, that within one week of election day, no information concerning the filing of a complaint can be made, would you object to that? I would, and I'll explain why. The reason is that the history of the case law and the history of our country is that a robust debate leading up to elections is critical. And under the First Amendment is a strong underpinning. The reasoning of the District Court of Rhode Island is really a beautiful opinion that was written and I've cited in the brief, which goes into a lot of that. And there's some language, I believe it's not in that case, but another case I've cited in my brief, which says that generally speaking the prohibition on speech with respect to the electoral process does not actually advance the freedom of the electoral process, but in fact is antithetical to it. That's the word used. And so our position is we would agree. However, Judge Connor and the testimony at the District Court did seem to suggest that even the government appellants would agree that they could dispose of a complaint with a matter of a few days. So even if it were restricted down to that maybe week before prohibition on disclosure, that would be a more narrowly tailored remedy. But this is not an election statute. This is an act that regulates financial conflicts of interest among state and local public officials. So even if we were to narrow it in the election context, there's whole other areas that would be covered by the act, correct? Yes. And I'd also say that there is a broader issue rather than just state officials in general. There's the question of can you even criticize the Ethics Commission itself? And I raised that issue to Mr. Contino because I said, well, what if I were to file a complaint with the Ethics Commission and I didn't like the way you handled it? How would I criticize you? And if you look at the transcript, there's really not an answer that he gives. He almost says, well, that's a good question, something of that nature. The Ethics Commission is not itself above political scrutiny. The Commission and the state have an interest and a strong interest in investigating allegations of corruption. Yes. And could you really argue that there is not any need for confidentiality in the investigations? No. I would not make that blanket argument. What I would say, though, is that the similar thread that runs through, for instance, Judicial Inquiry Review Board and all the case law dealing with grand juries where there is secrecy is that the information that an individual knows privately from other sources brings into the process can be brought out of the process. And so when a witness goes and testifies before an otherwise secretive grand jury, he or she can say what he or she testified about. And I'm saying it's directly analogous. That is an exception here. You can do that here. How so? David, they've adopted regulations. They're not specified in the statute, but they've adopted regulations that a witness with prior information who goes and testifies based on that prior information can disclose. Well, actually, I take issue with that. I don't think that's exactly correct. There's an exception for the media. No. No, that's different from the media. I'll find it for you. Okay. What exactly are you saying is not an exception, counsel? You're finding that, Judge Barry, what I'm saying is that if an individual goes and testifies before the Ethics Commission, what I was doing was I was analogizing an individual filing a complaint, providing information from the outside into the system, and saying that the individual who provides the information into the system should be allowed to publicize that he or she has provided the information into the system. 51 Pennsylvania Code, Section 21.6810. The Commission's regulations include an express exception to the confidentiality requirement for, quote, the divulgence by individuals who are interviewees or witnesses as to confidential commission proceedings regarding information that was already in their possession or the disclosure of their own statement. Yes, I'm sorry. You're correct. The analogy I was drawing was the filing of the complaint. The filing of the complaint is barred by the confidentiality provision. So they can say everything they said when they were in there. Or they can say – Or we can't say there was a complaint filed. I mean, that makes no sense. Before they file the complaint, they can say everything they know. They can say everything they know. Except the filing of the complaint. But they can't say that they have filed or, under the written law, that they intend to file. If they do intend to file, but if they say they're going to file and they don't intend to file, then, of course, that's – But they can disclose the statements that they made during the investigation to the Commission by what I just read. Not the contents of the complaint, though. Well. See, otherwise my client wouldn't have been prosecuted over what he did. I mean, there was a real-life investigation. My client sought an investigation, the House Majority Leader. And he ended up being the one being investigated because he had told some media outlets before he submitted the complaint that he intended to submit the complaint. That's right, but he can't do that. And he agreed. He admitted that he had violated 1108. Oh, yeah. It was a facial violation. And the media couldn't disclose because they had not legally received that information because he had violated 1108 when he gave it to them. That's right. Well, under the terms of the code. The media has to lawfully receive the information before they're within the exception. Within the exception as written in the code, yes. If I were representing a newspaper, I would – Well, that's the next case. Okay. I think, you know, just to sum it up here, the right to speech, obviously there's a heavy presumption against the constitutionality of a restriction on speech. This speech is quintessential political speech. It has to do with the functioning of government. And what we're talking about is more than just an abstract constitutional principle here. I was thinking of how, you know, there's been all the press about the awful travesty that's occurred in Luzerne County. And one of the issues that has been raised there is that there were complaints made to the Judicial Conduct Board that were not acted upon. And I was analogizing that to the Ethics Commission. If there were something festering in state government that someone tried to get the Ethics Commission to act on and the Ethics Commission didn't act on the complaint, how would a private citizen publicize to the world that this body which is supposed to oversee these things is not acting? And so I raise that because this is more than just an abstract constitutional principle. There are real-life consequences when the rights of free speech are chilled. But you do agree that we have a very narrow issue before us today. As written, yes. Okay. Thank you. Thank you, Your Honor. Rebuttal. Your Honors. First, I would just disagree with Judge Berry's assertion that the newspapers wouldn't be able to publish materials that they received in the hypothetical she gave because that was. They must have been lawfully obtained before they could be publicized. And if someone sends them something, even though that person unlawfully obtained them. I don't know. I don't really know. Do you? I mean, do we know that? Well, I believe that might be the landmark. Perhaps you're right. But that isn't what happened here. In this circumstance, Mr. Stilts has admitted that he violated the statute. So giving the press release to the media, I would think would be a good argument. It was not lawfully. The information was not lawfully obtained. Okay. Just very quickly, the purpose of the State Ethics Commission, it was established as an independent, apolitical, nonpartisan body, which was supposed to be different from district attorney's offices and run differently than grand juries, which are more political in nature. It has a distinction in that every single complaint that is filed with the State Ethics Commission has to be given consideration. And so that's part of why giving confidentiality to these complaints is important. Because if I say I gave a complaint to the district attorney's office, that doesn't have the same significance, because the district attorney's office could stick that complaint in a drawer. But the State Commission is actually going to open up a file and do something with it. Well, what if I, as an average citizen, say I have made a number of valid complaints to the Ethics Committee, and instead of looking into them, they say, oh, another one, let's file that in that circular receptacle. And also look at the stats. Aren't the stats that only about 10% actually turn into investigations? So doesn't that kind of say something about what a citizen might complain about? I filed any number of these, and they keep kicking them out after 24 hours? Well, someone in Mr. Stilts' position, first, he is free to say generally the State Ethics Commission, they should be looking into Politician A, Politician B, Politician C. Why is the State Ethics Commission not doing anything about this? Look at all the corruption, et cetera, et cetera. He's free to say that. He can say, you know, complaints must have been, you know. Isn't it a much more moment that he's free to say, and I have filed any number of these against these folks, and they're still not taking action? Well, I think when it comes down to the level of specifically saying that there's been a complaint as to X filed, which will notify and blow the cover off an investigation, then that is crossing the line. But to go to the other extreme and say he's not allowed to criticize the State Ethics Commission. Nobody's saying that. But Judge Hayden's question is correct. I mean, he can say, I have filed 10 complaints. And they've all been dismissed as without merit, and I say for this reason and that reason that they had merit. And although the commission was meant to be apolitical and trustworthy and as if appointed by God, they aren't appointed by God. They're appointed by people with interests, and maybe sometimes those interests come through. But the State Ethics Commission, they have the authority on their own to conduct all these investigations and pick it up on their own. So the fact that he has filed a complaint or not does not suppress his ability to talk about the failures of the State Ethics Commission in pursuing different investigations. But I just asked the court to look at my brief, and we would ask for the district court to be reversed. Thank you. Thank you. Thank you. We will take the case under advisement.